UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARK CAMPBELL, <br> SHERRIE CAMPBELL, <br>       **Plaintiffs,** <br> vs. <br><br> CHEATHAM COUNTY SHERIFF'S DEPARTMENT, <br> MUNICIPAL GOVERNMENT OF CHEATHAM COUNTY, <br> JAMES DOUGLAS FOX, <br> CHRISTOPHER AUSTIN, <br> MIKE BREEDLOVE. <br>       **Defendants.** | Case No. _____ <br><br> JURY DEMAND |

## COMPLAINT

Comes now Plaintiffs Mark Campbell and Sherrie Campbell, by and through counsel, and for causes of action against the Defendants would respectfully state as follows:

### I. JURISDICTION AND VENUE

1. This action arises under the Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Constitution of Tennessee.

2. This action is brought pursuant to 42 U.S.C. § 1983 for deprivation of Plaintiffs' civil and constitutional rights by the Defendants, and each of them, through actions taken against the Plaintiffs under the color of State law in Cheatham County, Tennessee, on or about August 21, 2018.

3. Action is brought pursuant to 42 U.S.C. § 1983, et seq., and 42 U.S.C. § 1988, et seq., and jurisdiction is established on the basis of a federal question pursuant to 28 U.S.C. § 1331, § 1343(a)(3)(4).

4. Supplemental Jurisdiction over Plaintiffs' claims for violations of Tennessee state law is established pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the factual acts and omissions which give rise to this cause of action occurred within this district and within one year of the filing of this complaint and this Court otherwise has jurisdiction.

### III. PARTIES

6. Plaintiff, Mark Campbell, is a citizen and resident of the United States, domiciled in Cheatham County, Tennessee.

7. Plaintiff, Sherrie Campbell, is a citizen and resident of the United States, domiciled in Cheatham County, Tennessee.

8. That the Cheatham County Sheriff's Department is a local governmental entity and employs defendants FOX, AUSTIN and BREEDLOVE.

9. That the County of Cheatham is a local government municipality in charge of and responsible for, among other things, the Cheatham County Sheriff's Department.

10. Defendant James Douglas Fox is employed in Cheatham County, Tennessee and was at all times material to the allegations in this Complaint acting in his capacity as a Cheatham County deputy sheriff sergeant and was acting under color of state law by virtue of his authority as a law enforcement officer. He is sued in his individual capacity.

11. Defendant Christopher Austin is employed in Cheatham County, Tennessee and was at all times material to the allegations in this Complaint acting in his capacity as a Cheatham County

deputy sheriff and was acting under color of state law by virtue of his authority as a law enforcement officer. He is sued in his individual capacity.

12. Defendant Mike Breedlove is employed in Cheatham County, Tennessee and was at all times material to the allegations in this Complaint acting in his capacity as the elected sheriff of Cheatham County and was acting under color of state law by virtue of his authority as a law enforcement officer and his supervisory responsibilities over, among other things, defendants FOX and AUSTIN. He is sued in his official capacity as policymaker for the Cheatham County Sheriff's Department.

## IV. FACTUAL ALLEGATIONS

13. On August 21, 2018, the Cheatham County Emergency Communications Center received three 911 hang-up calls between 21:15 and 21:19 hrs. which were allegedly traced to a disconnected cell phone, reported in the Incident Report #180821-0147 (attached as Exhibit 1) as #911-764-4590 and to Plaintiffs' address at 2024 Mosley Ferry Rd, Chapmansboro, Tennessee.

14. In response to these calls, Cheatham County Sheriff Deputy Christopher Austin and Sgt. Douglas Fox were dispatched to Plaintiffs' rural home and arrived at approximately 21:39.

15. The Cheatham County 911 Emergency Communications Center CAD Operations Report indicates two cell tower locations which serviced these calls, both of which are approximately six miles from the Plaintiffs' home. It is unclear how or why these calls were associated with the Plaintiffs' residence.

16. Plaintiffs deny having made any 911 calls prior to the arrival of the officers at their home.

17. Plaintiffs deny that the phone number associated with these calls is or was ever owned by either of them.

18. Upon arrival at Plaintiffs' home, neither officer utilized their vehicle's "emergency vehicle lights," anecdotally referred to as their "police lights," as shown in the dash cam and body cam videos filed by motion contemporaneously with this complaint.

19. Defendants vehicles were positioned with the headlights facing towards the Plaintiffs' home, creating a bright background against which it would be difficult if not impossible for Plaintiffs inside their home to see any details of the officers approaching their door.

20. Upon approaching the door to the residence and knocking, neither officer announced, as is required by law and police procedure, that they were law enforcement.

21. Defendants Fox and Austin's failure to follow basic police procedure by not announcing themselves as law enforcement created a dangerous and potentially deadly situation for which they are completely responsible.

22. Defendant Fox knocked on the door, walked a few steps away from the door and in response to Plaintiff Mark Campbell's question, from behind his closed door, "Do you have a gun?" Defendant Fox said, "Mark…. come on out Mark. What's up man?"

23. When Plaintiff Mark Campbell repeated his question about a gun and stated, "I've got one too," Defendant Fox unholstered his weapon, turned his back to the door, walked to a position which placed Deputy Austin between himself and Plaintiffs' door, stated "Do what Mark?" and immediately fired two rounds into the front of Plaintiffs' home, nearly striking Defendant Austin.

24. Defendant Fox's reckless use of deadly force was neither warranted nor justified by any reasonable belief that his action was immediately necessary to prevent imminent death or serious bodily injury.

4

Case 3:19-cv-00151   Document 1   Filed 02/16/19   Page 4 of 18 PageID #: 4

25. During this exchange, until the first two shots were fired, Defendant Austin was standing in a relaxed position approximately 12-15 feet from Plaintiffs' front door, showing no indication of a concern for any threat.

 

26. After the first two shots were fired, Defendant Austin dove to the ground and Defendant Fox fired six more rounds into Plaintiffs' home.



27. All eight rounds struck the home in the vicinity of the front door or went through the open door and struck the inside walls, barely missing Plaintiff Mark Campbell, and were only a few feet from where Plaintiff Sherrie Campbell was in bed, and between 2.5 feet and 6 feet measured from the floor of the residence, placing Plaintiffs in mortal danger.







28. At 21:41:45, after the shots were fired, and while retreating from the house, Sgt. Fox is heard on the body-cam video saying, "What did he point at us?"

29. Defendant Austin, who was closer to the Plaintiffs' door at the time Plaintiff Mark Campbell opened it to look out, answered, "I don't know, he came to the door and pointed something. That's why I ducked."

30. At 21:45:34 on Defendant Austin's body-cam video, Austin is heard saying, "What the f*** did he come out the door with?" to which Defendant Fox replied, **"I don't know. I assumed he had a gun."**

31. The comments of both officers clearly indicate that they had no idea what Plaintiff had in his hand and at no point clearly identified it as a weapon.

32. Defendant Austin knew or should have known that Defendant Fox was recklessly using excessive force under the circumstances with no justification.

33. Plaintiffs submit there were no weapons in their home, and none were found when officers later searched the home.

34. At 21:46:45, Plaintiff Mark Campbell is seen and heard on body-cam and on Defendant Fox's dash-cam, from his front door with his cell phone clearly displayed in his hand, telling the officers that he is unarmed and asking why they shot at him.



7

35. Despite seeing no weapon at any time, both Defendants Fox and Austin retrieved their AR-15 assault rifles from their vehicles in a Hollywood-esque escalation of force.

36. Defendants Fox's use of deadly force against Plaintiff Mark Campbell was objectively unreasonable, unnecessary, excessive, reckless and without legitimate law enforcement purpose.

37. After the aforementioned events occurred and backup law enforcement officers arrive, Plaintiff Mark Campbell was arrested and charged with assault on a police officer without any reasonable factual basis.

38. Plaintiff Sherrie Campbell was handcuffed, taken into temporary custody and was subjected to aggression, humiliation and intimidation by Defendants.

39. Upon knowledge and belief, subsequent to the aforementioned events, Defendants Fox and Austin made false statements during their debrief with Cheatham County Detective Michael Foust which are documented in the Incident Report, # 1800821-0147 (Exhibit 1).

40. Specifically, they stated that Plaintiff Mark Campbell stated, "I have one for you" in reference to having a gun, when he can be clearly heard on the body-cam saying, "I got one too." The fact that Defendant Fox knew exactly what Plaintiff Mark Campbell said is documented in his body-cam video at 22:10:25 wherein, while recounting the event to another officer, he clearly states he heard Campbell say, "I've got one too."

41. Defendants Austin and Fox also stated that they both began retreating from the front porch due to the comments made by Plaintiff Mark Campbell. The coordinated body-cam footage from Defendants Fox and Defendant Austin clearly show that Defendant Fox unholstered his weapon and walked behind Defendant Austin while Defendant Austin remained in his same,

relaxed position where he had stood throughout the exchange up to the point when the first shots were fired.

42. Defendant Fox stated that he observed the front door of the residence "abruptly open with Campbell Sr. holding an item in his right hand believing it to be a handgun." The coordinated body-cam footage clearly shows that Defendant Fox unholstered his weapon and turned his back on the Plaintiffs' door before it was opened. Whereas Defendant Austin had a clear view of the front door when it opened, Defendant Fox was walking away from the door before he turned and fired without provocation.

43. Furthermore, the comments by both Defendants Fox and Austin, addressed above, clearly show that neither officer knew what Plaintiff Mark Campbell was holding.

44. As a result of the events described herein, Plaintiffs have suffered, and continue to suffer, injuries to include mental anguish, insomnia, anxiety and physical pain.

45. Defendants, jointly and severally, were negligent *per se*, as Defendant Fox's use of deadly force was so far beyond any reasonable boundaries of his lawful authority in these circumstances, they constitute a violation of T.C.A. § 39-13-102, Aggravated Assault under state law and 18 U.S.C. § 242, Deprivation of Rights Under Color of Law under federal law.

46. The allegations stated herein are not mere conclusory statements but are based upon reports and videos Plaintiff has obtained from the Cheatham County Sheriff's Office. Plaintiff is filing a Motion along with this Complaint seeking to file a CD/DVD containing these videos to be considered as Exhibits to this Complaint.

# V. CAUSES OF ACTION

## COUNT 1: EXCESSIVE FORCE (§ 1983)

*Defendant FOX*
*Plaintiffs Mark Campbell and Sherrie Campbell*

47. Plaintiffs re-allege and incorporate all paragraphs in this Complaint as if expressly stated herein.

48. Neither Defendant Fox nor Defendant Austin announced themselves as law enforcement, as required under T.C.A. § 39-11-620, Use of Deadly Force by a Law Enforcement Officer, prior to Defendant Fox's use of deadly force.

49. Neither Defendant Fox nor Defendant Austin, according to their own report, were attempting to effect an arrest when they knocked on the Plaintiffs' front door on August 21, 2018 at 21:40.

50. Neither Defendant Fox nor Defendant Austin had probable cause to believe Plaintiff Mark Chapman had committed a felony involving infliction or threatened infliction of serious bodily injury.

51. Neither Defendant Fox nor Defendant Austin has probable cause to believe that either Plaintiff posed a threat of serious bodily injury, either to the officers or to others.

52. Both Defendant Fox and Defendant Austin state multiple times after the use of deadly force that they did not see or know what Plaintiff Mark Campbell had in his hand when he opened his front door.

53. Defendant Fox and Defendant Austin subsequently fabricated facts in their report in an attempt to cover up Defendant Fox's reckless and unjustified use of deadly force.

54. Without properly announcing themselves as law enforcement, without provocation and without a reasonable belief of any imminent harm, Defendant Fox fired eight rounds into Plaintiffs' home.

55. Defendant Fox purposefully, knowingly and recklessly used objectively unreasonable deadly force against Plaintiffs.

56. Defendants knew or should have known that the use of force applied against Plaintiff was objectively unreasonable.

57. As a direct and proximate result of the violation of his constitutional rights by the Defendants, Plaintiff suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C. § 1983.

58. The actions and omissions of the Defendants complained of herein were unlawful, conscious-shocking and unconstitutional and were performed maliciously, recklessly, fraudulently, intentionally, willfully, wantonly and in such a manner as to entitle the Plaintiff to an award of punitive damages.

## COUNT 2: FAILURE TO PROTECT
*Defendants AUSTIN*
*Plaintiffs Mark Campbell and Sherrie Campbell*

59. Plaintiffs re-allege and incorporate all paragraphs in this Complaint as if expressly stated herein.

60. Defendant Austin observed and had reason to know that excessive force was being used and had both the opportunity and the means to prevent the harm from occurring as he was well-positioned directly in front of Plaintiffs' door, observed Defendant Fox draw his weapon and had both the opportunity and duty to intervene.

61. There were multiple opportunities after the initial shots were fired by Defendant Fox for Defendant Austin to intervene and stop the subsequent events.

62. Defendant Austin participated in the ongoing drama, created solely by Defendant Fox's actions, blindly following an unconscionable chain of events when he had a duty to break that chain and protect the Plaintiffs from such unlawful conduct.

63. Defendant Austin is liable for failing to protect Plaintiff from Defendant Fox's excessive and unreasonable use of deadly force because he owed Plaintiffs a duty of protection against such use of deadly force.

64. As a direct and proximate result of the intentional, willful and/or recklessly indifferent acts of the Defendants, Plaintiffs have suffered and sustained mental and physical pain and suffering.

65. Plaintiffs are entitled to compensation for the constitutional harms that the Defendants inflicted upon them including personal injury, loss of liberty, and violation of their constitutional rights.

66. The above-described deprivations of Plaintiff's constitutional rights are a direct and proximate result of the actions and omissions of the Defendants.

67. Defendant Austin knew or should have known that his failure to protect Plaintiffs from such uses of deadly force was objectively unreasonable.

68. As a direct and proximate result of the violation of their constitutional rights by the Defendants, Plaintiffs suffered general and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. § 1983.

69. The actions and omissions of the Defendants complained of herein were unlawful, conscious-shocking and unconstitutional and were performed maliciously, recklessly, fraudulently, intentionally, willfully, wantonly and in such a manner as to entitle the Plaintiff to an award of punitive damages.

# COUNT 3: FAILURE TO TRAIN, SUPERVISE OR DISCIPLINE
## ("MONELL" Claim)

*Defendants BREEDLOVE, CHEATHAM COUNTY MUNICIPAL GOVERNMENT, CHEATHAM COUNTY SHERIFF'S DEPT.*
*Plaintiffs Mark Campbell and Sherrie Campbell*

70. Plaintiffs re-allege and incorporate all paragraphs in this Complaint as if expressly stated herein.

71. The Municipal Government of Cheatham County, by and through the Cheatham County Sheriff's Department, is in charge of hiring, training, supervising and disciplining its officers and employees within its control, such as Defendants Fox and Austin.

72. Defendant Mark Breedlove is the elected sheriff of Cheatham County who is responsible for implementing the County's policies and who creates the customs and culture within the Cheatham County Sheriff's department.

73. Defendant Breedlove maintains a departmental Facebook page where it is his regular practice to mock and ridicule citizens who have been ACCUSED of crimes within the county, creating a culture and unwritten policy within the Sheriff's Department that encourages disrespect, arrogance, malice and abuse.

74. Examples of the culture, policy and customs promulgated by Defendant Breedlove are found throughout the department's Facebook page at https://www.facebook.com/Cheatham-County-Sheriffs-Office-130305967034930/. A few examples are provided below, (emphasis added):

    a. "The husband on Cherokee was so mad--he tore her mirror off and busted out the rear window, while their three-year-old sat in the back seat. He found out we were on the way and ran off like a **real girly man**."
    b. "The deputy responded, "Con el debido respeto, Sr. Estúpido, está en América, donde tenemos leyes!" (With all due respect **Mr. Stupid, you are in America** where we have laws!)
    c. "With blue lights activated, the driver was obviously DUI and proceeded to resist his self-inflicted arrest. Continuing his **gang signs** he tried in earnest to **bitch slap** the deputy while holding up his **sagging pants**. His life decision stance of superiority didn't end well and jail became **his new crib**."

    d. (In a continuation of the post in item c. above): "The only victim was an innocent puppy that dashed out onto the road, nervously pooping several times on Hwy 41A causing a momentary traffic jam. Deputies put the pooped pooch in their car and waited for Animal Control's arrival. Animals are often smarter than their humans and this one barked and begged for his **master to be put down**."

75. The ongoing existence of the aforementioned Facebook page as the "official voice" of the Cheatham County Sheriff's Department demonstrates and establishes an implicit, if not explicit, endorsement of these abusive views and policies by the Cheatham County Municipal Government.

76. Defendant Breedlove's culture, customs and policies are the moving force behind the abusive and constitutionally violative actions of the officers under his command, including Defendants Fox and Austin.

77. As evidenced by the egregious use of deadly force by Defendant Fox against Plaintiffs, the Cheatham County Sheriff's Department has inadequately trained and/or disciplined its employees in the proper use of deadly force.

78. This failure is ominously overshadowed by the aforementioned culture, customs and policies promulgated by Defendant Breedlove which encourages not only departures from proper, constitutionally-sound police procedure, but also abusive, malicious and constitutionally violative actions by officers under his supervision.

79. Defendant Breedlove's abusive culture was the cause and moving force behind the violations of Plaintiffs' constitutional rights.

80. As a direct and proximate result of the violation of their constitutional rights by the Defendants, and as a direct result of the policies and culture promoted by Defendants, Plaintiffs suffered general and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C. § 1983.

81. The actions and omissions of the Defendants complained of herein, and the culture and policies promoted by Defendants, were unlawful, conscious shocking and unconstitutional and performed maliciously, recklessly, fraudulently, retaliatory, intentionally, willfully, wantonly and in such a manner as to entitle the Plaintiff to an award of punitive damages.

**COUNT 4: RECKLESS/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Negligent Infliction of Emotional Distress pled in the alternative)**

*All Defendants*
*Plaintiffs Mark Campbell and Sherrie Campbell*

82. Plaintiffs re-allege and incorporate all paragraphs in this Complaint as if expressly stated herein.

83. As a direct and proximate result of the tortious conduct by Defendants, Plaintiffs have suffered infliction of mental anguish and/or emotional distress.

84. At the time of Defendant Fox's intentional and reckless conduct, Defendant Fox was under the supervision of the Cheatham County Sherriff's Department and acting within the scope of his duty as a police officer.

85. The defendants' conduct was intentional and reckless and was intended by them to cause plaintiff severe emotional distress and mental injury and was outrageous. Plaintiffs' emotional distress directly resulted from the defendant's conduct.

86. Defendants owed a duty to the Plaintiffs to act in accordance with the standards of a reasonably prudent person endowed with the responsibilities and training of a police officer.

87. Defendants breached that duty by:

    i. Firing no less than eight shots at Plaintiff Mark Campbell and into Plaintiffs' home, placing Plaintiffs in mortal danger;

    ii. Assaulting a citizen in his own home, without provocation;

    iii. Subjecting Plaintiff Sherry Campbell to a proximate risk of mortal danger as well as experiencing the life-threatening attack on her husband who was in close proximity;

    iv. Wrongfully arresting Plaintiff Mark Campbell to perpetuate their false and fraudulent cover-up of the attack; and

    v. Invading the Plaintiffs home while placing Plaintiff Sherry Campbell in extreme fear and terror.

88. As a result of this breach the Plaintiffs have suffered and continue to suffer emotional distress and other injuries.

89. Defendants breach of duty is the proximate and legal cause of the Plaintiff's injuries.

90. Plaintiffs have suffered physical manifestations of distress as a direct result of the mental and emotional injury caused by the Defendants reckless and intentional actions.

91. As a police officer Defendant Fox had a duty to act in accordance with the standards and accepted practices of his profession and he failed to do so.

92. A reasonably prudent individual in Defendant Fox's position would not have fired eight rounds into the Plaintiffs house and toward Plaintiff Mark Campbell.

93. A reasonably prudent individual forced to endure the same life-threatening experiences outlined above would suffer mental anguish and emotional distress.

94. Plaintiff Mark Campbell has suffered emotional and psychological disturbances including but not limited to; lack of sleep, depression, the onset of headaches not experienced before this traumatic event, and fear of living in his own home.

16

Case 3:19-cv-00151    Document 1    Filed 02/16/19    Page 16 of 18 PageID #: 16

95. Plaintiff Sherrie Campbell has suffered emotional and psychological injuries including but not limited to; lack of sleep, depression, fear of living in her home own, and difficulty maintaining employment as a result of the Defendants negligence.

96. Defendant Fox undertook a life-threatening assault on the Plaintiffs in the absence of a credible threat, in the absence of any crime, in the absence of following of proper police procedure, and chose to use life threatening force against two unarmed individuals.

97. Defendants' conduct departed so greatly from established standards, procedures and law and was so outrageous such that punitive damages are warranted to deter Defendants and other similarly situated from engaging in such conduct in the future.

98. If Defendants actions are found to be negligent, rather than reckless and intentional, Plaintiffs incorporate all of the aforementioned elements in this cause of action and allege Negligent Infliction of Emotional Distress, in the alternative.

## PRAYERS FOR RELIEF

1. That process issued to the Defendants and that they be required to answer in the time required by law.

2. That judgment be rendered in favor of the Plaintiff and against the Defendants on all causes of action asserted herein.

3. That this Court allow Plaintiffs to file a CD/DVD containing videos of the incidents described herein to be considered as an Exhibit to this Complaint.

4. That Plaintiffs be awarded those damages to which they are entitled by proof submitted in this case for their physical and mental pain and suffering both past and future, loss of enjoyment of life, and the violation of their rights guaranteed to them by the Fourteenth Amendments to the Constitution of the United States.

5. That punitive damages be assessed against the Defendants.

6. That the Plaintiffs be awarded reasonable expenses including reasonable attorney's fees and expert fees and discretionary costs pursuant to 42 U.S.C. § 1988 (b) and (c).

7. That Defendants be held jointly and severally liable for all damages.

8. That the Plaintiffs receive any other further and general relief to which it may appear that they are entitled.

9. That a jury of twelve (12) is demanded.

Respectfully submitted,

\_\_/s/ John H. Morris_____
JOHN H. MORRIS
BPR # 35789
Nashville Vanguard Law, PLLC
Parkway Towers, Suite 102
404 James Robertson Parkway
Nashville, TN   37219
John.Morris@nashvillevanguardlaw.com
Phone: (615) 229-5529
Fax:    (615) 679-9520

*Attorney for the Plaintiffs*